The Honorable James C. Scott State Senator 321 State Highway 15 North Warren, Arkansas 71671
Dear Senator Scott:
This is in response to your request for an opinion on whether a drainage improvement district or watershed improvement district can legally contribute funds toward a Corps of Engineers feasibility study of a proposed irrigation project of a "Regional Water Distribution District."
Specifically, you indicate that the "Beouf-Tensas Regional Irrigation Water District needs additional funds to pay for the local matching portion of its feasibility study for its irrigation project. The project would transport water by using existing drainage canals for irrigation purposes." You note that the local drainage and watershed districts are concerned about the legality of any contributions they would make to the Corps of Engineers feasibility study. The involved local districts are either "drainage districts" governed by A.C.A. § 14-121-101 to -1009 (Repl. 1998) or "watershed districts" governed by A.C.A. § 14-117-101 to -427 (Repl. 1998). The "Beouf-Tensas Regional Irrigation Water District" is a "regional water distribution district" governed by the provisions of A.C.A. § 14-116-101 to -801 (Repl. 1998).
Your specific question is this regard is whether a drainage district and a watershed district can use district funds to participate in a U.S. Army, Corps of Engineers feasibility study of the Beouf-Tensas Irrigation Project.
In my opinion the answer to the question concerning the local districts' authority will depend upon a number of individual facts, which are enumerated below.
Your question does not clearly indicate whether the local drainage and watershed districts would make payment to the U.S. Army Corps of Engineers directly, or whether funds would be provided to the Beouf-Tensas Regional District. In any event, the inquiry must focus on the legality of a local district using funds for such purpose.
As stated previously, in my opinion the local district's authority in this regard will depend upon all the facts and circumstances. Most importantly, the source of the revenue from which the local district would supply the funds must be considered. For example, does the local district propose to use funds raised through the levy of assessments, from the collection of user charges, or from some other source? Are any of these revenues pledged to the repayment of bonds? Another fact that will be of relevance is the purposes for which the local district was formed. Was it formed for irrigation purposes or simply for "drainage?" Will the irrigation project of the Beouf-Tensas Regional Irrigation Water Distribution District further the purposes for which the local district was created and assessments levied? For example, will the Regional District's project result in additional improvement or maintenance of the local districts' improvements? Or would the project of the Regional district be viewed as a distinct project unrelated to the improvement constructed and maintained by the local district? Will any contract, supported by mutual consideration, be entered into between the local and regional districts regarding the project, or will the payment simply be a donation from the local to the Regional district? All of these factors would have to be considered in order to arrive at an answer to your question.
As for the relevant law, there is no discrete Arkansas statute in either of the relevant subchapters that directly answers your question. Any determination of the legality of such a payment must come from a reading of the subchapters as a whole. Local watershed and drainage districts are formed for the purpose of constructing improvements that will benefit the land within the district. The assessments are calculated based upon the benefit the improvement imparts to the land. A.C.A. § 14-117-421 (Repl. 1998) and A.C.A. § 14-121-402 (Repl. 1998). The benefits to the land are calculated and the assessments are charged with local taxes. A.C.A. §14-117-421 (Repl. 1998) and A.C.A. § 14-121-425 (Repl. 1998). The funds raised by the assessments are to be used to construct and maintain the improvement. A use of funds arising from assessments for purposes unrelated to the local district improvement might therefore be challenged. A central issue in answering your question is therefore whether the project contemplated by the Beouf-Tensas Regional District would further the purposes of the local district's improvement. This is a question of fact.
Similarly, use of any funds arising from "user fees" (for example, fees paid by persons purchasing or using water from a watershed district), may be restricted to maintaining the local districts improvements. Whether the Beouf-Tensas Project will result in maintenance or improvement of the local districts' projects is again a question of fact in each instance.
Finally, any funds that are pledged to the repayment of bonds may be unavailable for the contribution in question. Similarly, monies raisedfrom the sale of bonds may be restricted in use. See, e.g., A.C.A. §14-121-440 (making it a felony for drainage district officer to appropriate bond money for any unauthorized use or purpose). The provisions of any local trust indenture may come into play.
In conclusion, the legality of a local drainage or watershed improvement district's contribution to participate in a feasibility study of a regional district will depend upon a number of factual considerations of which I have not been apprised, and which I am not authorized, in the context of an official Attorney General opinion, to determine. There may well be circumstances under which a local district could lawfully contribute to a feasibility study performed for a regional district. In my opinion, the scenario that would come nearest passing legal muster would involve a local district formed for irrigation purposes, whose improvements would benefit from the regional district plan. Some type of contract or interlocal agreement between the local and regional district supported by mutual consideration would also aid in supporting the transaction's legality. In my opinion, however, local counsel, who would be in a position to evaluate all the facts, should review any ultimate arrangement.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh